IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| RAYTHEON COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:21-cv-239-RGJ |
| | ) | |
| v. | ) | |
| | ) | |
| AHTNA SUPPORT AND TRAINING SERVICES, LLC, AHTNA NETIYE', LLC, AHTNA, INCORPORATED, THOMAS M. OWENS, DAVID L. METCALF, and GREGORY L. HART, II, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF RAYTHEON COMPANY'S ORIGINAL COMPLAINT

### NATURE OF THE ACTION

Plaintiff Raytheon Company ("Raytheon"), by and through counsel, files this Complaint against Defendants Ahtna Support and Training Services, LLC; Ahtna Netiye', LLC; Ahtna, Incorporated (collectively "Ahtna"); Thomas M. Owens; David L. Metcalf; and Gregory L. Hart, II (collectively, "Defendants") and alleges the following actionable conduct:

### PARTIES

1. Plaintiff Raytheon is an aerospace and defense company that provides advanced systems and services for commercial, military, and government customers. Raytheon is a citizen of the State of Delaware and the Commonwealth of Massachusetts as it is a corporation organized and existing under the laws of Delaware with its principal place of business in Waltham, Massachusetts.

2. Ahtna Support and Training Services, LLC is an Alaska limited liability company with its principal place of business also in Alaska. Ahtna Support and Training Services, LLC has a single member, Ahtna Netiye', LLC.

3. Ahtna Netiye', LLC is an Alaska limited liability company with its principal place of business also in Alaska. Ahtna Netiye', LLC has a single member, Ahtna, Incorporated.

4. Ahtna, Incorporated is an Alaska corporation with its principal place of business also in Alaska. Ahtna Netiye', LLC, is the holding company of Ahtna, Incorporated. Ahtna Netiye', LLC also manages the operating subsidiaries and is wholly owned by Ahtna, Incorporated.

5. Ahtna Support and Training Services, LLC and Ahtna Netiye', LLC are all part of the Ahtna, Incorporated matrix organization (collectively, "Ahtna" or the "Ahtna Defendants"). Ahtna, Incorporated exercises a high degree of control over both Ahtna Support and Training Services, LLC's and Ahtna Netiye', LLC's operations and decisions, particularly those of the day-to-day nature. Ahtna Support and Training Services, LLC and Ahtna Netiye', LLC are also grossly inadequately capitalized.

6. At all relevant times herein mentioned, Defendant Thomas M. Owens was an individual residing in the Commonwealth of Kentucky and a field engineer employed by Ahtna.

7. At all relevant times herein mentioned, Defendant David L. Metcalf was an individual residing in the Commonwealth of Kentucky and a field engineer employed by Ahtna.

8. At all relevant times herein mentioned, Defendant Gregory L. Hart was an individual residing in the Commonwealth of Kentucky and a field engineer employed by Ahtna.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the action is between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs. As outlined more fully above, Plaintiff Raytheon

is a citizen of Delaware and Massachusetts for federal diversity jurisdiction purposes. Defendants, on the other hand, are not citizens of Delaware or Massachusetts.

10. This Court is a proper venue for this action under 28 U.S.C. § 1391(b) because a substantial part of the actions and omissions giving rise to this dispute occurred within this judicial district and division. Alternatively, this Court is a proper venue because one or more Defendants are subject to the Court's personal jurisdiction with respect to this action.

## STATEMENT OF FACTS

**I.  Raytheon's Lithium-Ion Battery Box Vault #2.**

11. Raytheon leases and operates an industrial complex and offices at 1001 Cheri Way, Louisville, Kentucky 40118 (the "Subject Property").

12. As part of Raytheon's business, and specifically pursuant to prime contracts W31P4Q-07-C-0088 and W31P4Q-19-C-0069, Raytheon provided worldwide support for the U.S. Government's ITAS/MITAS weapon system. This work included, among other things, maintaining, storing, servicing, operating, and/or operationalizing multiple mobile charging stations and storage locations for lithium-ion battery boxes ("LBBs"), which were owned by the U.S. Government (known as "Government Furnished Equipment" or "GFE"). One of Raytheon's charging stations was LBB Vault #2.

13. LBB Vault #2 was an explosion proof container mounted on a tow trailer that allows for the charging station's mobile deployment. LBB Vault #2 was constructed with steel shelves on each side of the structure that contain LBBs connected to Analytic AC Battery chargers.

14. After its construction, Raytheon placed LBB Vault #2 on a warehouse loading dock at the Subject Property. LBB Vault #2 was then powered by a connection to the warehouse's electrical system.

15. On April 1, 2020, Raytheon and Ahtna entered into multiple Purchase Orders whereby Ahtna agreed to provide qualified sustainment services and other necessary support to Raytheon at various locations throughout the United States. As set forth in the Supplier Statement of Work referenced in the Purchase Orders, this required Ahtna "to be cognizant of all requirements and provide[] all necessary support to meet the contractual requirements that pertain to field operations and management, and other general support activities as required." The Purchase Order and associated Supplier Statement of Work also pertained to and governed Ahtna's oversight of LBB Vault #2.

16. According to the April 1, 2020 Purchase Orders, "RAYTHEON COMPANY TERMS AND CONDITIONS AND PURCHASE ORDER (PO) ATTACHMENTS (COLLECTIVELY, THE "PO ATTACHMENTS") WERE PREVIOUSLY MADE AVAILABLE TO YOU AND ARE INCORPORATED HEREIN, SEE BELOW FOR THE COMPLETE STATEMENT OF THE RAYTHEON TERMS AND CONDITIONS APPLICABLE TO THE PO."

17. The April 1, 2020 Purchase Orders also noted that the "Raytheon General Terms and Conditions of Purchase TC-001 (07/19)" (hereinafter, "Terms and Conditions") applied to the Purchase Orders. More specifically, the Purchase Order states that "THE FOLLOWING RAYTHEON COMPANY . . . TERMS AND CONDITIONS AND PURCHASE ORDER (PO) ATTACHMENTS (COLLECTIVELY, THE "PO ATTACHMENTS"), WHETHER OR NOT ATTACHED TO THIS PURCHASE ORDER, ARE ACCESSIBLE AT THE URL SET FORTH BELOW AND INCORPORATED HEREIN AS IF FULLY SET FORTH IN THIS DOCUMENT: (1) RAYTHEON GENERAL TERMS AND CONDITIONS OF PURCHASE TC-001 (07/19) . . . ." This is because, as noted in the April 1, 2020 Purchase Orders, the Terms and

Conditions apply to Purchase Orders issued to suppliers in the United States, which includes Ahtna.

18. By entering into the April 1, 2020 Purchase Orders, Ahtna "warrant[ed] that the performance of services shall conform with the requirements of this Purchase Order and to high professional standards."

19. The Terms and Conditions also required Ahtna to indemnify Raytheon against all claims and resulting costs arising out of property loss or damage attributable to or caused by Ahtna pursuant to the April 1, 2020 Purchase Orders. That indemnity provision provided, in pertinent part,

> [Ahtna] shall, without limitation, indemnify and save [Raytheon] and its customer(s) and their respective officers, directors, employees and agents harmless from and against (i) all claims and resulting costs, expenses (including attorney fees and costs) and liability which arise from personal injury, death, or property loss or damage attributed to, or caused by, the goods supplied, or the services performed by [Ahtna] pursuant to this Purchase Order, except to the extent that such injury, death, loss or damage is caused solely and directly by the negligence of [Raytheon], and (ii) all claims (including resulting costs, expenses and liability) by the employees of [Ahtna] or any of its subcontractors.

20. Regarding Raytheon's property, the Terms and Conditions provided that

> [Ahtna] shall maintain [Raytheon's] Property and shall be responsible for all loss or damage to [Raytheon's] Property except for normal wear and tear. [Ahtna] shall (i) within two (2) working days, report to [Raytheon] the loss, theft, damage, destruction of [Raytheon's] Property, or if any such property is found to be malfunctioning or otherwise unsuitable for use and (ii) determine and report the root cause and all pertinent facts as soon as they become known, and corrective action taken to prevent recurrence, at no additional cost to [Raytheon].

21. Finally, in executing the Purchase Orders, Ahtna expressly agreed that it would comply with Raytheon's rules, regulations, and orders while performing work on property owned or controlled by Raytheon. More specifically, Ahtna agreed that

> [i]f work is to be performed on premises owned or controlled by [Raytheon], then [Ahtna] shall comply with all the rules and regulations established by [Raytheon] for access to and activities in and around premises owned or controlled by

>[Raytheon]. [Ahtna] shall be responsible for the actions and failure to act of all parties retained by, through, or under [Ahtna] in connection with the performance of this Purchase Order.

22. To perform that work, Ahtna was required to provide and train qualified field engineers to assist with Raytheon's prime contracts, W31P4Q-07-C-0088 and W31P4Q-19-C-0069.

**II.    The May 13-14, 2020 Incident.**

23. On April 15, 2020, an Ahtna employee discovered that two LBBs vented and melted inside LBB Vault #2. That Ahtna employee subsequently contacted his supervisor and Raytheon personnel, who instructed him to secure LBB Vault #2.

24. The damage suffered by LBB Vault #2 was generally limited to two LBBs, LBB #528 and LBB #941, as well as minor, secondary damage to a limited number of adjacent LBBs. All other LBBs contained within LBB Vault #2 remained stable and functional.

25. Raytheon and Ahtna secured LBB Vault #2 and undertook a root cause analysis of the failure of LBB #528 and LBB #941. Even though LBB #528 and LBB #941 had experienced a failure, they were in a stable condition pending Raytheon's root cause analysis and plan for safe remediation of those two LBBs (#528 and #941) from LBB Vault #2.

26. On May 8, 2020, an LBB "investigation" meeting took place with Raytheon, Ahtna, and an engineer from Saft (the manufacturer of the LBBs). During this meeting, there was a discussion about how to safely remove LBB #528 and LBB #941. Ahtna field engineer Thomas M. Owens suggested he take a sledgehammer and crowbar to peel the melted batteries from the floor. Multiple members of the group told Thomas M. Owens that using a sledgehammer and crowbar to peel up the two melted batteries was not safe and not the path to proceed with in removing the two batteries. It was again emphasized that Ahtna was not to physically touch any of the LBBs in the vault. After this meeting, it was determined that Clean Harbor, a remediation

company, would remove the two affected LBBs, but that a plan still needed to be determined on how to best and safely remove the two affected LBBs.

27. On May 12, 2020, Raytheon directed Ahtna to take photographs of LBB #528 and LBB #941.

28. On May 13, 2020, at approximately 11:00am, three Ahtna employees—Thomas M. Owens, David L. Metcalf, and Gregory L. Hart—arrived at LBB Vault #2 to take photographs of LBB #528 and LBB #941. Although their explicit direction was to only take photographs of the two damaged lithium-ion battery packs, Thomas M. Owens, David L. Metcalf, and Gregory L. Hart brought with them a small metal pry bar and a sledgehammer.

29. Thomas M. Owens, David L. Metcalf, and Gregory L. Hart subsequently used those tools to remove LBB #528 from the floor of LBB Vault #2 where it had melted and re-solidified.

30. Mr. Owens then attempted to remove LBB #941 from a metal shelf with the small pry bar and sledgehammer. He was unsuccessful in his efforts and the three employees eventually made the decision to go to lunch. The three Ahtna employees then secured LBB Vault #2 and left.

31. The three Ahtna employees returned to LBB Vault #2 at approximately 1:30pm with additional metal pry bars.

32. At that time, Mr. Owens yet again attempted to remove LBB #941 with large metal pry bars and a sledgehammer. At some point during this grossly negligent and unauthorized action, the second LBB began to emit sparks and smoke, signaling the start of a thermal runaway event, which led to the fire.

33. After fleeing LBB Vault #2, the three Ahtna employees contacted their supervisor and returned to the exterior of the vault with a forward-looking infrared ("FLIR") camera.

34. With the FLIR camera, the three Ahtna employees, and others, observed several areas of high temperature within LBB Vault #2. They also observed smoke emanating from LBB Vault #2. The three Ahtna employees, and others, also heard popping sounds coming from within LBB Vault #2, signaling a cascading thermal event that the three Ahtna employees had negligently started.

35. At approximately 3:50pm the Fairdale Fire Department responded to the thermal runaway event and engaged the LBB Vault #2's $CO_2$ fire suppression system. The Fairdale Fire Department also used an aerial nozzle in an attempt to extinguish the fire inside the Vault. Once the Fairdale Fire Department suppressed the fire, they sprayed foam inside the Vault. Firefighters remained onsite and at the Subject Property until approximately 8:00pm.

36. Five hours later, at approximately 1:00am on May 14, 2020, the Fairdale Fire Department returned to the scene because LBB Vault #2 had reignited. Firefighters applied large hose streams to knock the fire down and then removed the Vault from the loading dock to the middle of the Subject Property's parking lot. The Fairdale Fire Department then decided to allow the fire consuming LBB Vault #2 to burn itself out.

37. Smoke and flames continued to pour out of LBB Vault #2 well into the morning of May 14, 2020.

38. The May 13-14, 2020 Incident completely destroyed LBB Vault #2. Indeed, a later inspection revealed that all 304 LBBs stored within LBB Vault #2 had released their energy through combustion and electrical faults and were all completely destroyed.

**III.     Raytheon Has Suffered Damages Due To The May 13-14, 2020 Incident.**

39. The May 13-14, 2020 Incident has resulted in Raytheon suffering significant financial and reputational damages.

40. As a result of the May 13-14, 2020 Incident, the Subject Property suffered more than $2,700,000 in fire and fire-related damages, as well as remediation costs. LBB Vault #2 itself was also a total loss.

41. Additionally, the 304 LBBs and the chargers in LBB Vault #2 were a total loss. The U.S. Government has not yet made a specific monetary demand on Raytheon for the loss of this GFE. The U.S. Government has, however, notified Raytheon that Raytheon shall either replace the destroyed GFE or reimburse the U.S. Government at the present day value of the GFE.

42. Raytheon has also suffered significant reputational damages as a result of the May 13-14, 2020 Incident.

43. Raytheon provided Ahtna with notice of its claims and damages on or about December 23, 2020.

44. Ahtna has refused to pay for Raytheon's damages stemming from the May 13-14, 2020 Incident.

## CAUSES OF THE ACTION

### Count I – Breach of Contract (Against the Ahtna Defendants)

45. Raytheon re-alleges the allegations set forth in Paragraphs 1 through 44 as if set forth verbatim herein.

46. At all times relevant to this litigation, Raytheon and Ahtna were parties to valid and enforceable Purchase Orders whereby Ahtna agreed to provide qualified sustainment services and other necessary support to Raytheon at various locations throughout the United States.

47. The Purchase Orders, Supplier Statement of Work, and Terms and Conditions also pertained to and governed Ahtna's operation and management of LBB Vault #2.

48. Ahtna agreed to provide Raytheon with all necessary support to meet the contractual requirements that pertain to field operations and management of LBB Vault #2.

49. At all times relevant to this litigation, Raytheon completely performed its obligations under the terms of the Purchase Orders, Supplier Statement of Work, and Terms and Conditions.

50. Ahtna breached the terms of the Purchase Orders, Supplier Statement of Work, and Terms and Conditions by failing to provide qualified sustainment services and other necessary support to ensure the safe and proper operation and management of LBB Vault #2. Specifically, Ahtna breached Sections 10(d) ("Buyer's Property") of the Terms and Conditions, as well as Sections and 20(b) ("Responsibility and Insurance").

    a.    Section 10(d) provided that

> [Ahtna] shall maintain [Raytheon's] Property and shall be responsible for all loss or damage to [Raytheon's] Property except for normal wear and tear. [Ahtna] shall (i) within two (2) working days, report to [Raytheon] the loss, theft, damage, destruction of [Raytheon's] Property, or if any such property is found to be malfunctioning or otherwise unsuitable for use and (ii) determine and report the root cause and all pertinent facts as soon as they become known, and corrective action taken to prevent recurrence, at no additional cost to [Raytheon].

    b.    Section 20(b) provided that

> [i]f work is to be performed on premises owned or controlled by [Raytheon], then [Ahtna] shall comply with all the rules and regulations established by [Raytheon] for access to and activities in and around premises owned or controlled by [Raytheon]. [Ahtna] shall be responsible for the actions and failure to act of all parties retained by, through, or under [Ahtna] in connection with the performance of this Purchase Order.

51. Ahtna also breached the terms of the Purchase Orders by failing to perform services to high professional standards in accordance with Section 13(a) of the Terms and Conditions ("Warranty"). Pursuant that Section, Ahtna "warrant[ed] that the performance of services shall conform with the requirements of this Purchase Order and to high professional standards."

52. Additionally, Ahtna breached their "Objectives" and "Responsibilities" as defined in the Supplier Statement of Work by failing to provide and train qualified field engineers to assist with Raytheon's prime contracts, W31P4Q-07-C-0088 and W31P4Q-19-C-0069.

53. As a result of Ahtna's failure to provide qualified sustainment services and other necessary support to ensure the safe and proper operation and management of LBB Vault #2, Raytheon suffered significant financial and reputational damages.

54. Ahtna further breached the terms of the Purchase Orders, Supplier Statement of Work, and Terms and Conditions by failing to indemnify and save Raytheon from and against all claims and resulting costs, expenses (including attorney fees and costs) and liability following the May 13-14, 2020 Incident. Specifically, Ahtna breached Section 21(b) of the Terms and Conditions ("Indemnity Against Claims").

   a. Section 21(b) provided that

   [Ahtna] shall, without limitation, indemnify and save [Raytheon] and its customer(s) and their respective officers, directors, employees and agents harmless from and against (i) all claims and resulting costs, expenses (including attorney fees and costs) and liability which arise from personal injury, death, or property loss or damage attributed to, or caused by, the goods supplied, or the services performed by [Ahtna] pursuant to this Purchase Order, except to the extent that such injury, death, loss or damage is caused solely and directly by the negligence of [Raytheon], and (ii) all claims (including resulting costs, expenses and liability) by the employees of [Ahtna] or any of its subcontractors.

55. As a result of Ahtna's failure to agree to indemnify and save Raytheon from and against all claims and resulting costs, expenses and liability following the May 13-14, 2020 Incident, Raytheon will continue to suffer significant financial and reputational damages.

56. Based on the foregoing, Raytheon is entitled to damages from Ahtna, as described in Paragraphs 39 through 44 and in amounts to be proven at trial, as well as attorneys' fees.

**Count II – Negligence (Against All Defendants)**

57. Raytheon re-alleges the allegations set forth in Paragraphs 1 through 56 as if set forth verbatim herein.

58. Thomas M. Owens, David L. Metcalf, and Gregory L. Hart owed Raytheon a general duty of care not to cause harm or injury to Raytheon.

59. Thomas M. Owens, David L. Metcalf, and Gregory L. Hart breached their duty of care when they attempted to remove the LBBs with large metal pry bars and a sledgehammer and when they went beyond and against Raytheon's direction.

60. Thomas M. Owens, David L. Metcalf, and Gregory L. Hart were all aware that Raytheon had only directed them to take photographs of two LBBs, LBB #528 and LBB #941. Additionally, at least Thomas M. Owens knew that he was not to touch and absolutely not approved to use a sledgehammer or a large metal pry bar to remove LBBs in LBB Vault #2.

61. Thomas M. Owens, David L. Metcalf, and Gregory L. Hart failed to exercise even slight care when they negligently attempted to remove the LBBs with large metal pry bars and a sledgehammer.

62. Thomas M. Owens, David L. Metcalf, and Gregory L. Hart caused Raytheon to suffer significant financial and reputational damages following their failure to operate and maintain LBB Vault #2 in a reasonably safe manner.

63. Ahtna is vicariously liable due to the negligent actions of Thomas M. Owens, David L. Metcalf, and Gregory L. Hart, all of whom were Ahtna employees acting within the scope of their employment.

64. Defendants' actions proximately caused the loss of Raytheon's property, including warehouse damage, loss of LBB Vault #2, and loss of all the GFE, including but not limited to the 304 LBBs, stored in LBB Vault #2.

65. Based on the foregoing, Raytheon has suffered significant financial and reputational damages following the negligent failure of Defendants to exercise even slight care in the performance of their duties, including Defendants' negligent actions in attempting to remove the LBBs with large metal pry bars and a sledgehammer; therefore, Raytheon is entitled to damages from Defendants as described in Paragraphs 39 through 44 and in amounts to be proven at trial.

**Count III – Gross Negligence (Against All Defendants)**

66. Raytheon re-alleges the allegations set forth in Paragraphs 1 through 65 as if set forth verbatim herein.

67. Thomas M. Owens, David L. Metcalf, and Gregory L. Hart owed Raytheon a general duty of care not to cause harm or injury to Raytheon.

68. Thomas M. Owens, David L. Metcalf, and Gregory L. Hart breached their duty of care when they negligently attempted to remove the LBBs with large metal pry bars and a sledgehammer and when they went beyond and against Raytheon's direction.

69. Thomas M. Owens, David L. Metcalf, and Gregory L. Hart were all aware that Raytheon had only directed them to take photographs of two LBBs, LBB #528 and LBB #941. Additionally, at least Thomas M. Owens knew that he was not to touch and absolutely not approved to use a sledgehammer or a large metal pry bar to remove LBBs in LBB Vault #2

70. Thomas M. Owens, David L. Metcalf, and Gregory L. Hart failed to exercise even slight care when they attempted to remove the LBBs with large metal pry bars and a sledgehammer.

71. Thomas M. Owens', David L. Metcalf's, and Gregory L. Hart's unilateral decision to attempt to remove the LBBs with large metal pry bars and a sledgehammer constituted a

wanton and reckless disregard for the lives and safety of others, as well as Raytheon's property and the GFE stored in LBB Vault #2.

72. Thomas M. Owens, David L. Metcalf, and Gregory L. Hart caused Raytheon to suffer significant financial and reputational damages following their failure to operate and maintain LBB Vault #2 in a reasonably safe manner.

73. Ahtna is vicariously liable due to the grossly negligent actions of Thomas M. Owens, David L. Metcalf, and Gregory L. Hart, all of whom were Ahtna employees acting within the scope of their employment.

74. Defendants' actions proximately caused the loss of Raytheon's property, including warehouse damage, loss of LBB Vault #2, and loss of all the GFE, including but not limited to the 304 LBBs, stored in LBB Vault #2.

75. Based on the foregoing, Raytheon has suffered significant financial and reputational damages following the negligent failure of Defendants to exercise even slight care in the performance of their duties, including Defendants' wanton and reckless actions in attempting to remove the LBBs with large metal pry bars and a sledgehammer; therefore, Raytheon is entitled to damages from Defendants as described in Paragraphs 39 through 44 and in amounts to be proven at trial.

**Count IV – Negligent Training and Supervision (Against the Ahtna Defendants)**

76. Raytheon re-alleges the allegations set forth in Paragraphs 1 through 75 as if set forth verbatim herein.

77. Ahtna knew or had reason to know of Thomas M. Owens, David L. Metcalf, and Gregory L. Hart's propensities to engage in careless and unsafe behavior.

78. Upon information and belief, Ahtna's employee records of Thomas M. Owens, David L. Metcalf, and Gregory L. Hart show that Ahtna should have required additional training and/or supervision for these individuals, including for prior safety violations.

79. Thomas M. Owens, David L. Metcalf, and Gregory L. Hart injured Raytheon when they failed to operate and maintain LBB Vault #2 in a reasonably safe manner and attempted to remove the second LBB with large metal pry bars and a sledgehammer.

80. Ahtna's hiring, supervision, and/or retention of Thomas M. Owens, David L. Metcalf, and Gregory L. Hart proximately caused Raytheon to suffer significant financial and reputational damages.

81. Based on the foregoing, Raytheon has suffered significant financial and reputational damages following the negligent hiring, supervision, and retention of Thomas M. Owens, David L. Metcalf, and Gregory L. Hart; therefore, Raytheon is entitled to damages from Defendants as described in Paragraphs 39 through 44 and in amounts to be proven at trial.

**Count V – Declaratory Judgment (Against the Ahtna Defendants)**

82. Raytheon re-alleges the allegations set forth in Paragraphs 1 through 81 as if set forth verbatim herein.

83. Actual and genuine controversies, disputes, and uncertainties currently exist between Raytheon and Ahtna regarding whether Ahtna is required to indemnify Raytheon for all costs, expenses (including attorney fees and costs) and liability arising from the May 13-14, 2020 Incident, which includes the costs Raytheon will incur in reimbursing the U.S. Government for the destroyed GFE.

84. Ahtna has declined to accept their contractual obligation to indemnify Raytheon for all costs, expenses (including attorney fees and costs) and liability arising from the May 13-14,

2020 Incident pursuant to the terms of the Purchase Orders and their associated Terms and Conditions.

85. Declaratory relief is necessary to resolve the relative rights and obligations of the Parties with respect to whether Ahtna is required to indemnify Raytheon for all costs, expenses, and liabilities arising from May 13-14, 2020 Incident, including any future costs, expenses, and liabilities.

## PRAYER

WHEREFORE, Raytheon respectfully requests that Defendants be cited to appear and answer and further requests judgment against Defendants for the following:

1. An order declaring that Ahtna is contractually obligated to indemnify Raytheon for all costs, expenses (including attorney fees and costs) and liability arising from the May 13-14, 2020 Incident, including any future costs, expenses, and liabilities.

2. Compensatory damages against the Defendants in an amount sufficient to fully compensate Raytheon for the injuries sustained as a result of Defendants' unlawful conduct, including those damages described in Paragraphs 39 through 44 and in amounts to be proven at trial;

3. Punitive and exemplary damages against all Defendants in an amount sufficient to deter the Defendants and others from engaging in this conduct in the future;

4. The court costs and attorneys' fees incurred by Raytheon in the preparation and prosecution of this action;

5. Pre- and post-judgment interest at the maximum rate allowed by law; and

6. Any and all other further relief the Court deems just and proper.

Dated: April 14, 2021

Respectfully submitted,

BOEHL STOPHER & GRAVES, LLP

*/s/ Rod D. Payne*
Rod D. Payne
(Kentucky Bar No.86836)
400 W. Market Street, Suite 2300
Louisville, Kentucky 40202
Telephone: (502) 589-5980
Fax: (502) 561-9400
Email: rdpayne@bsg-law.com
*Counsel for Raytheon Company*