UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:21-CV-239-RGJ

RAYTHEON COMPANY                                                                                   Plaintiff

v.

AHTNA SUPPORT AND TRAINING                                                                  Defendants
SERVICES, LLC; AHTNA NETIYE', LLC;
AHTNA, INCORPORATED; THOMAS M.
OWENS

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Defendants Ahtna Support and Training Services, LLC, Ahtna Netiye', LLC, and Ahtna, Incorporated ("Defendants") move to dismiss Plaintiff Raytheon Company's ("Raytheon") Complaint. [DE 22].[1] This matter is ripe. [DE 24; DE 25]. For the reasons below, Defendants' Motion to Dismiss [DE 22] is **DENIED**.

### I. BACKGROUND[2]

Raytheon is a defense company that had government contracts to maintain "mobile charging stations and storage locations for lithium-ion battery boxes" ("LBBs") owned by the United States Government. [DE 1 at 1, 3]. LBB Vault #2 was a mobile charging station that contained LBBs. [*Id.* at 3].

Defendants agreed to provide "qualified sustainment services" to Raytheon, which included management and oversight of LBB Vault #2. [*Id.* at 4]. Defendants hired field engineers for these services. [*Id.* at 6].

---

[1] Defendant Thomas M. Owens neither filed a motion to dismiss nor joined this motion.
[2] The following background is taken from the Complaint.

1

In April 2020, two LBBs "vented and melted" in LBB Vault #2. [*Id.*]. During a meeting to decide how to remediate the LBBs, one of Defendants' field engineers, Thomas Owens, suggested using a sledgehammer and crowbar to remove the melted batteries. [*Id.*]. People at this meeting told Owens that using a sledgehammer and crowbar would not be safe. [*Id.*]. Raytheon directed Defendants' employees to take pictures and not to touch or try to remove the damaged batteries. [*Id.* 6-7]. In May 2020, three of Defendants' field engineers, Thomas Owens, David Metcalf, and Gregory Hart, attempted to remove the LBBs with a pry bar and sledgehammer. [*Id.* at 7]. They failed in their endeavor and left for lunch. [*Id.*]. While they were gone, the LBBs emitted sparks, and LBB Vault #2 caught fire, destroying LBB Vault #2 and all 304 LBBs that were stored in it. [*Id.* at 7-8].

Raytheon sued Ahtna Support And Training Services, LLC, Ahtna Netiye', LLC, and Ahtna, Incorporated, Thomas Owens, David Metcalf, and Gregory Hart, II,[3] bringing one claim of breach of contract, three claims of negligence—negligence, gross negligence, and negligent training and supervision[4]—and a claim for declaratory judgment. [*Id.* at 9-16]. Defendants move to dismiss the Complaint. [DE 22]. Raytheon responded [DE 24], and Defendants replied. [DE 25].

## II.   STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that

---

[3] Raytheon subsequently voluntarily dismissed defendants David L. Metcalf and Gregory L. Hart II. [DE 29].

[4] The claims of negligence and gross negligence are against all defendants. [DE 1 at 11-15]. The claim of negligent training and supervision is against Ahtna Support and Training Services, LLC, Ahtna Netiye', LLC, and Ahtna, Incorporated, only. [DE 1 at 14-15].

the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64

Rule 12(d) of the Federal Rules of Civil Procedure provides that, if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The Court, however, "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are

central to the claims contained therein" without converting to a summary judgment. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. DISCUSSION

Defendants move to dismiss the claims against them because Raytheon failed to state a claim against them on which relief may be granted. [DE 22 at 136].

*i. Breach of Contract Claim*

Defendants argue that the breach of contract claim against them fails because Raytheon failed to establish the elements of a breach of contract. [DE 22-1 at 145-48]. Defendants argue that Raytheon failed to identify and present the terms of the Contract, because Raytheon failed to attach the contract to the complaint. [*Id.* at 145-46]. Defendants also argue that Raytheon fails to identify what corporate entity is a party to the contract because the Complaint refers to the Ahtna Defendants as "Ahtna," and Raytheon has not met its burden for piercing the corporate veil. [*Id.* at 147].

To state a claim for breach of contract, a plaintiff must plead: "(1) the existence of a valid contract; (2) breach of the contract; and (3) damages or loss to plaintiff." *Sudamax Industria e Comercio de Cigarros, Ltda v. Buttes & Ashes, Inc.*, 516 F. Supp. 2d 841, 845 (W.D. Ky. 2007). In Kentucky, "an enforceable contract must contain definite and certain terms setting forth promises of performance to be rendered by each party." *Kovacs v. Freeman*, 957 S.W.2d 251, 254 (Ky. 1997); *Seye v. Richardson*, No. 2:14-CV-38-EBA, 2015 WL 3887053, at *1 (E.D. Ky. June 23, 2015); *see also Harris v. Am. Postal Workers Union*, 198 F.3d 245 (6th Cir. 1999) ("It is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached"). Additionally,

4

parties may only sue for a breach of contract if privity of contract existed. *Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 579 (Ky. 2004).

Raytheon alleges that "Raytheon and Ahtna were parties" to the alleged contracts. Raytheon defined "Ahtna" as "Defendants Ahtna Support and Training Services, LLC; Ahtna Netiye', LLC; Ahtna, Incorporated." [DE 1 at 1, 9]. These alleged facts, if true, allow the Court to draw the reasonable inference that privity of contract existed between Raytheon and each defendant, Ahtna Support and Training Services, LLC, Ahtna Netiye', LLC, and Ahtna, Incorporated, regardless of any alter ego or corporate veil theory. *Presnell Const. Managers, Inc.*, 134 S.W.3d at 579 ("Privity of contract is the relationship between parties to a contract, allowing them to sue each other[.]" (internal citations and quotations omitted)).

In the complaint, Raytheon has also set forth allegations of specific terms of the contract allegedly between Defendants and Raytheon, breach of that contract, and damages:

> 46. At all times relevant to this litigation, Raytheon and Ahtna were parties to valid and enforceable Purchase Orders whereby Ahtna agreed to provide qualified sustainment services and other necessary support to Raytheon at various locations throughout the United States.
>
> 47. The Purchase Orders, Supplier Statement of Work, and Terms and Conditions also pertained to and governed Ahtna's operation and management of LBB Vault #2.
>
> 48. Ahtna agreed to provide Raytheon with all necessary support to meet the contractual requirements that pertain to field operations and management of LBB Vault #2.
>
> 49. At all times relevant to this litigation, Raytheon completely performed its obligations under the terms of the Purchase Orders, Supplier Statement of Work, and Terms and Conditions.
>
> 50. Ahtna breached the terms of the Purchase Orders, Supplier Statement of Work, and Terms and Conditions by failing to provide qualified sustainment services and other necessary support to ensure the safe and proper operation and management of LBB Vault #2. Specifically, Ahtna breached Sections 10(d) ("Buyer's Property")

of the Terms and Conditions, as well as Sections and 20(b) ("Responsibility and Insurance").

    a. Section 10(d) provided that [Ahtna] shall maintain [Raytheon's] Property and shall be responsible for all loss or damage to [Raytheon's] Property except for normal wear and tear. [Ahtna] shall (i) within two (2) working days, report to [Raytheon] the loss, theft, damage, destruction of [Raytheon's] Property, or if any such property is found to be malfunctioning or otherwise unsuitable for use and (ii) determine and report the root cause and all pertinent facts as soon as they become known, and corrective action taken to prevent recurrence, at no additional cost to [Raytheon].

    b. Section 20(b) provided that [i]f work is to be performed on premises owned or controlled by [Raytheon], then [Ahtna] shall comply with all the rules and regulations established by [Raytheon] for access to and activities in and around premises owned or controlled by [Raytheon]. [Ahtna] shall be responsible for the actions and failure to act of all parties retained by, through, or under [Ahtna] in connection with the performance of this Purchase Order.

51. Ahtna also breached the terms of the Purchase Orders by failing to perform services to high professional standards in accordance with Section 13(a) of the Terms and Conditions ("Warranty"). Pursuant that Section, Ahtna "warrant[ed] that the performance of services shall conform with the requirements of this Purchase Order and to high professional standards."

52. Additionally, Ahtna breached their "Objectives" and "Responsibilities" as defined in the Supplier Statement of Work by failing to provide and train qualified field engineers to assist with Raytheon's prime contracts, W31P4Q-07-C-0088 and W31P4Q-19-C-0069.

53. As a result of Ahtna's failure to provide qualified sustainment services and other necessary support to ensure the safe and proper operation and management of LBB Vault #2, Raytheon suffered significant financial and reputational damages.

54. Ahtna further breached the terms of the Purchase Orders, Supplier Statement of Work, and Terms and Conditions by failing to indemnify and save Raytheon from and against all claims and resulting costs, expenses (including attorney fees and costs) and liability following the May 13-14, 2020 Incident. Specifically, Ahtna breached Section 21(b) of the Terms and Conditions ("Indemnity Against Claims").

    a. Section 21(b) provided that [Ahtna] shall, without limitation, indemnify and save [Raytheon] and its customer(s) and their respective officers, directors, employees and agents harmless from and against (i) all claims and resulting costs, expenses (including attorney fees and costs) and liability which arise from personal injury, death, or property loss or damage attributed to, or caused by, the goods supplied, or the services performed by [Ahtna] pursuant to this Purchase Order, except to the extent that such injury, death, loss or damage is caused solely and directly by the negligence of [Raytheon], and (ii) all claims (including resulting

> costs, expenses and liability) by the employees of [Ahtna] or any of its subcontractors.
>
> 55. As a result of Ahtna's failure to agree to indemnify and save Raytheon from and against all claims and resulting costs, expenses and liability following the May 13-14, 2020 Incident, Raytheon will continue to suffer significant financial and reputational damages.

[*Id.* at 9-11].

Raytheon has pled factual allegations supporting the essential elements of a breach of contract claim. The facts, as pled, allow the Court to draw a reasonable inference that Defendants breached their contractual obligation and are therefore liable for the misconduct alleged. *Ashcroft*, 556 U.S. at 678 (citing *Bell*, 550 U.S. at 556).

    ii.   *Negligence Claims*

Defendants argue that Raytheon's claims of negligence, gross negligence, and negligent training and supervision fail because Raytheon does not allege a duty independent of the alleged contractual requirements. [DE 22-1 at 148-52].

In Kentucky, "a party having viable contract and negligence claims may pursue both, [but] the initial inquiry is whether there is a negligence claim independent of the contract claim." *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 791 (Ky. 2017); *see also Nami Res. Co., L.L.C. v. Asher Land & Min., Ltd.*, 554 S.W.3d 323, 336 (Ky. 2018) (*affirming Superior Steel*). "Liability for a [ ] negligence claim must be predicated on an extra-contractual duty." *RQSI Glob. Asset Allocation Master Fund, Ltd v. Apercu Int'l PR LLC*, 683 F. App'x 497, 502 (6th Cir. 2017) (citing *Mims v. W.-S. Agency, Inc.*, 226 S.W.3d 833, 836 (Ky. App. 2007)). A plaintiff may not bring negligence claims that are "merely contract claims repackaged as tort claims." *Nelson v. Columbia Gas Transmission, LLC.*, 808 F. App'x 321, 330 (6th Cir. 2020) (applying Kentucky law).

7

To prevail on a negligence claim under Kentucky law, the plaintiff must prove that the defendant (1) owed the plaintiff a duty of care, (2) the defendant breached the standard of care by which his duty is measured, and (3) that the breach was the legal cause of the consequent injury. *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012); *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88–89 (Ky. 2003). Duty is a question of law for the court to decide, breach and injury are questions of fact for the jury to decide, and causation is a mixed question of law and fact. *Pathways, Inc.*, 113 S.W.3d at 89 (citing *Deutsch v. Shein*, 597 S.W.2d 141, 145 (Ky. 1980), *abrogated by Osborne v. Keeney*, 399 S.W.3d 1 (Ky. 2012)). An analysis of the duty element of a negligent claim revolves around foreseeability of injury. *Boland-Maloney Lumber Co. v. Burnett*, 302 S.W.3d 680, 686 (Ky. App. 2009). "[E]very person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Isaacs v. Smith*, 5 S.W.3d 500, 502 (Ky. 1999), *as modified on denial of reh'g* (Dec. 16, 1999) (alteration in original). In determining whether an injury was foreseeable, the Court looks to what the defendant knew at the time of the alleged negligence. *Pathways, Inc.*, 113 S.W.3d at 90. As for causation, a party must allege both but-for causation and proximate cause to sustain a negligence action. *Howard v. Spradlin*, 562 S.W.3d 281, 287 (Ky. App. 2018).

Under its breach of contract claim, Raytheon alleges duties related to the maintenance of LBB Vault #2. [DE 1 at 9-15]. Under its negligence claims, Raytheon alleges that "Thomas M. Owens, David L. Metcalf, and Gregory L. Hart owed Raytheon a general duty of care not to cause harm or injury to Raytheon" and breached this duty by attempting "to remove the LBBs with large metal pry bars and a sledgehammer and when they went beyond and against Raytheon's

direction."[5] [*Id.* at 12-15]. Raytheon also alleges that "Ahtna knew or had reason to know of Thomas M. Owens, David L. Metcalf, and Gregory L. Hart's propensities to engage in careless and unsafe behavior," and "that Ahtna should have required additional training and/or supervision for these individuals, including for prior safety violations." [*Id.* at 14-15]. Raytheon argues that these duties are "far beyond the contractual requirements to maintain and service the Government-furnished LBBs and LBB Vault #2 or to hire and train field service engineers." [DE 24 at 177]. Raytheon argues these duties in negligence are "not to destroy the subject property and not to handle such property in a manner that it causes an uncontrollable fire." [*Id.*]. These duties that Raytheon identifies under its negligence claims are not identical to those alleged duties under the contract to safely maintain LBB Vault #2. *See Superior Steel, Inc.*, 540 S.W.3d at 791. Defendants also dispute the existence of a contract and whether they are parties to it. [DE 22-1 at 145-48]. Any time a party is not in privity to a contract—or when a contract does not exist—logically that party has no duty arising from a contract. *Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 579 (Ky. 2004) (whenever a wrong is founded upon a breach of contract, the plaintiff suing in respect thereof must be a party or privy to the contract). Therefore, even if the alleged duties were the same, Raytheon could maintain its claim of negligence as a claim in the alternative, as the existence of the contract is in dispute. Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency").

Raytheon alleges that Defendants had a duty not to harm Raytheon and to hire and train field service engineers. [DE 1 at 9-15]. Raytheon alleges that the employees that attempted to remove the LBBs were told not to touch them, and that Owens was told that it would not be safe

---

[5] Raytheon alleges that "Ahtna is vicariously liable due to the negligent actions of Thomas M. Owens, David L. Metcalf, and Gregory L. Hart, all of whom were Ahtna employees acting within the scope of their employment." [DE 1 at 12]. Defendants do not dispute this allegation.

to use a sledgehammer and crowbar. [*Id.* at 6-7]. These allegations, if true, establish that there was the potential for foreseeable harm to occur, and thus that Defendants and their employees had a legal duty to avoid the foreseeable harm. *See Bolus v. Martin L. Adams & Son*, 438 S.W.2d 79, 81 (Ky. 1969) (The foreseeability factor only requires that "injury of some kind to some person could have been foreseen."); *see also CNC Foundations, Inc. v. Turnbull-Wahlert, Constr., Inc.*, No. CV 20-118-DLB, 2021 WL 2187346, at *3 (E.D. Ky. May 28, 2021) (individual with contract to install things on a building had extra-contractual duty not to damage the building). For causation, Raytheon alleges that Defendants actions "caused" and "proximately caused the loss of Raytheon's property, including warehouse damage, [and] loss of LBB Vault #2." [DE 1 at 12-15]. Because these factual allegations could establish causation if proven true, Raytheon has adequately pled a claim for negligence at this stage of the proceedings. *See Mod. Holdings, LLC v. Corning Inc.*, No. CIV. 13-405-GFVT, 2015 WL 1481457, at *20 (E.D. Ky. Mar. 31, 2015) (denying a motion to dismiss a negligence claim when the party adequately pled that they were injured and the other party caused that injury).[6]

   iii. *Declaratory Judgment Claim*

Defendants argue that Raytheon's declaratory judgment claim requires the Court to enter an advisory opinion, because there is no actual controversy yet, and thus the Court lacks jurisdiction over this claim. [DE 22 at 152-54]. Raytheon's declaratory judgment claim asserts that Ahtna is contractually obligated to "indemnify Raytheon for all costs expenses (including attorney fees and costs) and liability" arising from the April 2020 fire at LBB Vault #2. [DE 1 at

---

[6] Defendants also argue that "Counts I-III result in the same alleged harm, unspecified financial damages in excess of $2,700,000 and the vague 'damage to reputation' from the destruction of LBB Vault #2." [DE 22-1 at 150]. While it "goes without saying that the courts can and should preclude double recovery," at this stage the Court will allow the counts to remain, at least as an alternative theory of recovery. *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 333 (1980).

15-16]. Raytheon argues that this does not require the Court to enter an advisory opinion because Raytheon has alleged the Government has "notified Raytheon that Raytheon shall either replace the destroyed [LBBs and Vault] or reimburse the U.S. Government at the present day value." [*Id.* at 9; DE 24 at 179]. Raytheon argues that this is the "Government [asserting] a claim." [DE 24 at 180].

Under Article III of the United States Constitution, this Court may only adjudicate actual "cases" and "controversies." U.S. Const., Art. III, § 2; *see Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 597 (2007) ("Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies'"). This limitation extends to suits filed under the Declaratory Judgment Act. 28 U.S.C. § 2201; *see also Larry E. Parrish. P.C. v. Bennett*, 989 F.3d 452, 456–57 (6th Cir. 2021) ("To get a declaratory judgment, [the plaintiff] must present a justiciable case or controversy under Article III.") *and Detroit, Toledo & Ironton R. Co. v. Consol. Rail Corp.*, 767 F.2d 274, 279 (6th Cir. 1985) ("[T]he 'case or controversy' requirement applies to declaratory judgment actions"). "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–41 (1937) (citations omitted). There must be some "threatened injury," even if it is not "absolutely 'immediate' and 'real.'" *Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 845 (6th Cir. 1994).

Raytheon alleges that the Government has "notified Raytheon that Raytheon shall either replace the destroyed [LBBs and Vault] or reimburse the U.S. Government at the present day value." [DE 1 at 9]. Regardless of the exact amount, the Government's assertion that it will hold

Raytheon responsible for some portion of the value of the destroyed property is sufficiently definite to be a controversy that the Court may adjudicate this claim. *See Hillard v. First Fin. Ins.*, 968 F.2d 1214 (6th Cir. 1992) ("A controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop."). Thus, the declaratory judgment claim may remain.

    *iv.    Punitive Damages*

Defendants argue that Raytheon's punitive damages claim should be dismissed because punitive damages are unavailable for breach of contract claims. [DE 22 at 152].

Punitive damages are available in Kentucky when gross negligence is shown, but not for breach of contract. *Williams v. Wilson*, 972 S.W.2d 260, 262–65 (Ky. 1998); *Nami Resources Company, L.L.C.*, 554 S.W.3d at 335. Because Raytheon's gross negligence claim remains, its punitive damages claim may also remain.

As a result, Defendants' motion to dismiss [DE 22] is **DENIED**.

### IV. CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Defendants' Motion to Dismiss [DE 22] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

March 23, 2022

Cc: Counsel of record