UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:21-CV-239-RGJ

RAYTHEON COMPANY                                                                                              Plaintiff

v.

AHTNA SUPPORT AND TRAINING                                                                       Defendants
SERVICES, LLC; AHTNA NETIYE', LLC;
AHTNA, INCORPORATED; THOMAS M.
OWENS

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

Third-Party Defendant Saft America Inc. ("Saft") moves to dismiss Counts I, II, and III of the third-party complaint filed by Defendant/Third-Party Plaintiff Ahtna Support and Training Services, LLC, Ahtna Netiye', LLC, and Ahtna, Incorporated (collectively "Ahtna"). [DE 84]. Ahtna responded [DE91], and Saft replied [DE 93]. Plaintiff Raytheon Company ("Raytheon") did not respond. This matter is ripe. For the reasons below, Saft's Motion to Dismiss [DE 84] is **GRANTED in part** and **DENIED in part**.

### I.   BACKGROUND[1]

Raytheon is a defense company that had government contracts to maintain "mobile charging stations and storage locations for lithium-ion battery boxes" ("LBBs") owned by the United States Government. [DE 1 at 1, 3]. Ahtna alleges that "[t]he LBBs are designed, manufactured, supplied, serviced, and repaired by Saft [who] regularly delivers, removes, and replaces LBBs." [DE 70 at 480]. LBB Vault #2 was a mobile charging station that contained

---

[1] The following background is taken from the original Complaint [DE 1] and Ahtna's Third-Party Complaint [DE 70].

1

LBBs. [DE 1 at 3]. Ahtna alleges that "the Vault contained a fire suppression system. [DE 70 at 480].

Ahtna agreed to provide "qualified sustainment services" to Raytheon, which included management and oversight of LBB Vault #2. [*Id.* at 4]. Ahtna hired field engineers for these services. [*Id.* at 6]. Ahtna alleges that "Raytheon hired and contracted with Koorsen to inspect, test, and maintain the fire suppression system." [DE 70 at 481].

In April 2020, two LBBs "vented and melted" in LBB Vault #2. [DE 1 at 6]. During a meeting to decide how to remediate the LBBs, one of Ahtna' field engineers, Thomas Owens ("Owens"), suggested using a sledgehammer and crowbar to remove the melted batteries. [*Id.*]. People at this meeting told Owens that using a sledgehammer and crowbar would not be safe. [*Id.*]. Raytheon directed Ahtna' employees to take pictures and not to touch or try to remove the damaged batteries. [*Id.* 6-7].

Ahtna alleges that Raytheon "kn[ew] the environment within Vault #2 was dangerous and volatile . . . [but] instructed Ahtna[] employees to enter the Vault." [DE 70 at 482]. On May 13, 2020, three of Ahtna' field engineers, Owens, David Metcalf, and Gregory Hart, attempted to remove the LBBs with a pry bar and sledgehammer. [DE 1 at 7]. They failed in their endeavor and left for lunch. [*Id.*]. While they were gone, the LBBs emitted sparks, and LBB Vault #2 caught fire. [*Id.* at 7-8]. Ahtna alleges that the "fire suppression system within Vault #2 did not activate . . . and did not function as intended to remove oxygen from the inside of the Vault. [DE 70 at 482]. Firefighters "engaged the LBB Vault #2's $CO_2$ fire suppression system" and suppressed the fire. [DE 1 at 8]. Ahtna alleges that firefighters "advised Raytheon to move Vault #2 further away from the warehouse and office building to eliminate or reduce the risk of further damage in the event of the fire reigniting or an additional fire . . . [but] Raytheon refused and/or

failed to move Vault #2." [DE 70 at 482-83]. A few hours later, on May 14, firefighters returned because Vault #2 had reignited. [DE 1 at 8]. The fire destroyed LBB Vault #2 and all 304 LBBs that were stored in it. [*Id.* at 7-8].

Raytheon sued Ahtna and Owens[2] bringing one claim of breach of contract, three claims of negligence—negligence, gross negligence, and negligent training and supervision[3]—and a claim for declaratory judgment. [*Id.* at 9-16]. Ahtna brought a third-party complaint against Saft and Koorsen Fire & Security, Inc., alleging claims for "Strict [Products] Liability," "Negligence," and "Implied Indemnity" [DE 70], and Saft now moves to dismiss the third-party complaint. [DE 84].

## II.     STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice

---

[2] Raytheon also sued David Metcalf and Gregory Hart, II but subsequently voluntarily dismissed defendants David L. Metcalf and Gregory L. Hart II. [DE 29]. Owens remains a defendant. He has answered the complaint [DE 21] and has not moved to dismiss.
[3] The claims of negligence and gross negligence are against all defendants. [DE 1 at 11-15]. The claim of negligent training and supervision is against Ahtna only. [DE 1 at 14-15].

if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64

Rule 12(d) of the Federal Rules of Civil Procedure provides that, if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The Court, however, "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein" without converting to a summary judgment. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. DISCUSSION

Saft moves to dismiss the claims against them because Ahtna failed to state a claim against them on which relief may be granted. [DE 84 at 564]. Ahtna disagrees. [DE 91].

#### i. *Statute of Limitations*

Saft argues that Ahtna's claims against them "for strict product liability and negligent defective design" fail because they are barred by Kentucky's one-year statute of limitations. [DE

4

84 at 568]. Ahtna argues that it "does not assert any direct claims of product liability or negligence" against Saft and that its indemnity claims are timely under Kentucky's five-year indemnity statute of limitations. [DE 91 at 604-05]. In reply, Saft argues that it did not seek to dismiss indemnity claims but only "direct causes of action against Saft" so "Ahtna's argument is [] moot." [DE 93 at 638-39]. "Saft does not contend that Ahtna's indemnity claims were barred by statute of limitations [but] moves for dismissal of Ahtna's claims to the extent such claims are read to be direct causes of action against Saft." [*Id.*]. As Ahtna does not assert any direct claims of products liability or negligence, the Court does not analyze any. Thus, the Court **GRANTS** Saft's motion as to any direct claim for damages.

        ii.   *Contribution and Indemnification*

Saft moves to dismiss Ahtna's indemnity claim. Ahtna argues for the survival of a 'contribution claim' as Saft did not challenge Ahtna's "claim for contribution" but only its "claim for indemnity." [DE 91 at 600]. Ahtna's third-party complaint does not include an explicit "contribution claim." In reply, Saft argues that Kentucky has "obviated" any right to contribution. [DE 93 at 637-38]. Saft "recognizes apportionment instructions are within this Court's discretion, even if Ahtna's indemnity claims are dismissed." [DE 84 at 573].

Under current Kentucky law, "liability among joint tortfeasors in negligence cases is no longer joint and several, but is several only." *Degener*, 27 S.W.3d at 779. Kentucky Revised Statute ("KRS") § 411.182 provides that "[i]n all tort actions, including products liability actions, involving fault of more than one (1) party to the action . . ., the court . . . shall instruct the jury to [determine] . . . [t]he percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability." KRS § 411.182 "'is simply a codification of this common law evolution of the procedure

for determining the respective liabilities of joint tortfeasors,' whether joined in the original complaint or by third-party complaint." *Kentucky Farm Bureau Mut. Ins. Co. v. Ryan*, 177 S.W.3d 797, 802–03 (Ky. 2005) (quoting *Degener*, 27 S.W.3d at 779). "If there is an active assertion of a claim against joint tortfeasors, and the evidence is sufficient to submit the issue of liability to each, an apportionment instruction is required." *Floyd v. Carlisle Const. Co.*, 758 S.W.2d 430, 432 (Ky. 1988) (emphasis omitted).

KRS § 411.182 "provides a right to an apportionment interrogatory or finding where underlying substantive fault exists, but it does not provide a substantive cause of action itself." *Hall v. MLS Nat. Med. Evaluations, Inc.*, No. CIV A 05-185-JBC, 2007 WL 1385943, at *2 (E.D. Ky. May 8, 2007); *Asher v. Unarco Material Handling, Inc.*, No. CIV.A.6:06-548-DCR, 2008 WL 2473680, at *3 (E.D. Ky. June 16, 2008). Additionally, "the apportionment of causation and the requirement of several liability obviates any claim for contribution among joint tortfeasors whose respective liabilities are determined in the original action." *Degener*, 27 S.W.3d at 779. Accordingly, the Court finds that Ahtna does not have a "claim" against Saft for contribution or apportionment, but Ahtna "has actively asserted claims against the third party defendant so as to preserve its right to apportionment pursuant to KRS § 411.182 if the evidence supports such an instruction at trial." *Burton v. HO Sports Co.*, No. 4:06CV-100-JHM, 2009 WL 1390832, at *2 (W.D. Ky. May 14, 2009); *see also Kelly v. Arrick's Bottled Gas Serv., Inc.*, No. CV 14-118-DLB-EBA, 2016 WL 4925787, at *8 (E.D. Ky. Sept. 14, 2016) ("contribution/apportionment is not an independent cause of action"). Thus the Court **GRANTS** Saft's motion as to any claim for contribution. Ahtna has preserved the right to an apportionment instruction at trial.

    a. *Active Tortfeasor*

Saft next argues that counts one, two, and three of Ahtna's claims against it for indemnification fail because Ahtna was the "active tortfeasor" that caused Raytheon's injury and is thus owed no indemnification. [DE 84 at 569-72]. Saft contends that even if the batteries failed due to its own negligence, Saft's "design of the subject batteries [did not] cause Ahtna's" employees to "use[] pry bars and a sledgehammer on Raytheon's property." [DE 93 at 643]. Ahtna argues that indemnity is proper here because when analyzing the active tortfeasor, the "appropriate focus should be on equitable principles and operative facts" rather than on "labels, such as active/passive and primary/secondary." [DE 91 at 605-10].

Under Kentucky common law, a party is entitled to indemnity only if "the liability to a third party is the result of a wrongful act of a joint tortfeasor." *Celina Mut. Ins. Co. v. Harbor Ins. Agency, LLC*, 332 S.W.3d 107, 114 (Ky. App. 2010) (citing *Degener*, 27 S.W.3d at 780). "Indemnity claims are permitted in two classes of cases:

> "(1) Where the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment; or
> (2) where both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury."

*Degener*, 27 S.W.3d at 780 (quoting *Louisville Ry. Co. v. Louisville Taxicab & Transfer Co.*, 256 Ky. 827 (1934)). Thus, indemnity is available for those who are only "constructively or secondarily liable to a plaintiff." *Id.* at 781. The second situation, the one at issue here, "usually arises where the primary tortfeasor created the hazard, while the secondary tortfeasor simply failed to perform some legal duty, such as inspection or remedying a hazard." *Stanford v. United States*, 948 F. Supp. 2d 729, 745 (E.D. Ky. 2013) (citing *Brown Hotel Co. v. Pittsburgh Fuel Co.*, 311 Ky. 396 (1949)). "In other words, '[w]here one of two parties does an act or creates a hazard and' a second party, 'while not concurrently joining in the act, is, nevertheless thereby exposed to

liability . . ., the party who was the active wrongdoer or primarily negligent can be compelled to make good to the other any loss he sustained.'" *Hall*, 2007 WL 1385943, *3 (quoting *Brown Hotel Co.*, 311 Ky. 396).

Saft argues "Ahtna's negligence rendered it the active tortfeasor in this matter" when its employees used "a crowbar and sledgehammer on a friction-sensitive product, in opposition to direct orders, and despite a hazard crew having been optioned to complete the job.' [DE 84 at 571]. Ahtna argues that "Safts' fault overshadows any fault attributed to Ahtna," and that "the LBB or LBBs within Vault #2 failed exothermically as a result of a defective battery management system, causing a fire to ignite within the Vault[,] causing the damages that Raytheon claims against Ahtna." [DE 91 at 605]. Ahtna contends that the fires "were caused or brought about by the defective design and/or malfunction of the LBBs, including the defective battery management system." [*Id.*]. Ahtna urges the Court to focus on "equitable principles and operative facts" rather than a "tunnel vision' on 'labels, such as active/passive and primary/secondary." [*Id.* at 605-06]. In support of their arguments, each party cites case law they find factually analogous. [DE 84; DE 91; DE 93].

Ahtna alleges that Saft designed a defective product, that product failed, Saft knew it was prone to fail and that the failure would lead to fires and resulting damages, and that the failure of the LBBs caused the fires at issue. [DE 91 at 609]. The cause of the fire is a factual question—it is not known to the Court whether the batteries caught fire due to the sledgehammer and pry bars or whether they would have caught fire regardless of Ahtna's actions.[4] This is not a motion for summary judgment. Despite Saft's argument that whether its product failed it did not cause

---

[4] This question is likely best answered by experts in the field of LBB batteries, which this Court is not, and which as a question of fact, regardless the Court could not resolve on a motion to dismiss.

8

Ahtna's employees to take a sledgehammer to them,[5] Ahtna has sufficiently pled that the failure of Saft's batteries were the primary cause of the fire. Thus the Court finds Ahtna as sufficiently pled that "both parties have been in fault, but not in the same fault, towards the party injured and the fault of the party from whom indemnity is claimed [Saft] was the primary and efficient cause of the injury." *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000).

Saft briefly argues that active tortfeasors cannot seek indemnification from one another. As discussed above, under Kentucky law, "[t]ortfeasor A can only succeed on an indemnity claim against Tortfeasor B if Tortfeasor B was 'the active wrongdoer or primarily negligent' while Tortfeasor A was 'only constructively or secondarily liable' to the plaintiff." *Stanford v. United States*, 948 F. Supp. 2d 729, 745 (E.D. Ky. 2013) (quoting *Degener*, 27 S.W.3d at 780–81). But again, regardless of Saft's argument, Ahtna has sufficiently pled that Saft was the primary cause of the fire and that Ahtna was secondarily liable. Further argument on this issue is appropriate only at the summary judgment stage.

      b. *Cause of Action*

Saft next argues that "a third party indemnification claim must stem from the same cause of action asserted by the initial plaintiff against the initial defendants." [DE 84 at 572-73]. In support of this argument Saft cites only *ISP Chemicals LLC v. Dutchland, Inc.*, 771 F. Supp. 2d 747, 751 (W.D. Ky. 2011), which states, "[p]laintiff's claims . . . are essentially negligent design or construction. [third-party plaintiff] Duchland's claims . . . are negligent soil preparation. This is not a case where we have primary negligence and secondary negligence. This is not an indemnity case." *Id.* That court was making a conclusion on primary and secondary negligence and concluded that the third-party plaintiff and third-party defendant were *in pari delicto*. *Id.* The

---

[5] This, again, is a question of fact. Ahtna alleges that the employees entered the Vault in the first place due to the batteries' failure. [DE 70 at 482].

9

Court fails to see how this supports the argument that the causes of action must be identical. Furthermore, as in the cases cited by Ahtna, *Degener*, 27 S.W.3d 775, and *York v. Petzl Am., Inc.*, 353 S.W.3d 349 (Ky. App. 2010), the third-party plaintiffs brought claims that were not identical to the original plaintiff's. Thus, as it lacks support, the Court rejects Saft's argument that the "third-party indemnification claim must stem from the same cause of action asserted by the initial plaintiff against the initial defendants."[6] [DE 84 at 572-73].

### iii. Conclusion

Having concluded that Ahtna's claims are not barred by the statute of limitations, that Ahtna has sufficiently pled that Saft was the primary tortfeasor, and thus that Ahtna could receive indemnification by Saft, the Court **DENIES** Saft's Motion to Dismiss as to its claims for indemnity. [DE 84].

### IV. CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Saft's Motion to Dismiss [DE 84] is **GRANTED in part** and **DENIED in part**.

Rebecca Grady Jennings, District Judge
United States District Court

August 22, 2023

Cc: Counsel of record

---

[6] Perhaps Saft's argument is intended to argue that the cause of action against the third-party defendant must stem from the same transaction or occurrence as the original complaint. Ahtna as sufficiently pled such here, where each cause of action stems from the same fire.

10