IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| RAYTHEON COMPANY, | : |
| | : |
| Plaintiff, | : |
| | : CIVIL ACTION |
| v. | : FILE NO. 3:21-cv-239-RGJ |
| | : |
| AHTNA SUPPORT AND TRAINING | : |
| SERVICES, LLC, et al. | : |
| | : |
| Defendants/Third-Party Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| SAFT AMERICA, INC. and KOORSEN | : |
| FIRE & SECURITY, INC., | : |
| | : |
| Third-Party Defendants. | : |

**MEMORANDUM OF LAW IN OPPOSITION TO SAFT AMERICA INC.'S MOTION FOR SUMMARY JUDGMENT**

Defendants/Third-Party Plaintiffs, Ahtna Support and Training Services, LLC, Ahtna Netiye', and Ahtna, Incorporated (collectively, "Ahtna") submit this Memorandum of Law in Opposition to Saft America Inc.'s ("Saft") Memorandum in Support of Motion for Summary Judgment (the "Memorandum"). (Dkt. 145, Mem.).

**I.    INTRODUCTION**

Saft's Memorandum raises four arguments: (i) that its Lithium Batter Boxes ("LBBs") are not defective; (ii) that Ahtna was the active tortfeasor; (iii) as the active tortfeasor, Ahtna cannot seek indemnity from another active tortfeasor; and (iv) if Dr. Tal Nagourney's opinions are excluded, there is no evidence that Saft's LBBs are defective. With the exception of the argument related to Dr. Nagourney's opinions (which is meritless and addressed via separate opposition),

Saft's Memorandum seeks to ignore record evidence and to try and expunge its tainted record of LBB failures.

Genuine issues of material fact permeate this factual record, which is why Ahtna did not move for summary judgment as to its claims against Saft—it simply wouldn't be appropriate at this stage. By the same token, there is sufficient evidence for the trier of fact to conclude that Saft's LBBs were defective, and that Saft was the active tortfeasor. Summary judgment must, therefore, be denied.

## II.  BACKGROUND[1]

Saft began manufacturing LBBs in 2006 to be used as a portable power source for the United States Army's TOW missile with Improved Target Acquisition System. Between 2008 and 2021, the LBBs proved problematic—mainly attributed to the design and manufacture of the LBBs themselves. Between 2008 and March 2020, Saft LBBs experienced exothermic failures on four separate occasions. On April 15, 2020, the problems with Saft's LBBs manifested once again and resulted in exothermic failures of LBBs 528 and 941, which damaged 14 other LBBs in Vault 2 at the Fairdale facility.

There can be no dispute that a defect in the Saft LBBs caused the April 15, 2020 catastrophic failure. There can likewise be no dispute that Ahtna employee Tom Owens would not have been in Vault 2 on May 13, 2020 but for the April 15, 2020 LBB failure. That fact is self-evident. Saft expert Jason Sutula, however, conspicuously skirted the issue during his deposition. (*See* Ex. A, Sutula Dep. Tr. 255:8-16 [stating that this was "outside the area and the scope of [his]

---

[1] Ahtna incorporates, by reference, the detailed factual and procedural history contained within its Motion for Summary Judgment. (Dkt. 148.)

analysis"].) But even Raytheon's expert, after attempting to evade the question, had to answer it in the affirmative:

> Q: He wouldn't have been - - the only reason he was in the vault on May 13 was to take photographs of the LBBs that were damaged in a catastrophic thermal runaway even 28 days earlier, right?
> A: That is – I mean, apparently, he was also in the vault with the purposes of prying them out, but I can't – yes, his instructions were to be in there in order to take photographs.
> Q: And you're suggesting to the jury that the failure of multiple LBBs in April is irrelevant, right?
> A: No. I believe I said it was sort of context in the background of the situation. So those failures certainly caused damage to the LBBs that ultimately resulted in the fire.

(Ex. B, Dr. Harding Dep. Tr. 250:18-251:9.) Ahtna's expert, Dr. Nagourney, agrees. (*See, e.g.*, Dkt. 145, Ex. I, Dr. Nagourney Rep. at 25 [stating that the May 13, 2020 fire would not have occurred if "LBBs 528 and 941 had not experienced exothermic failures one month prior on April 15, 2020"]; *id.* at 26 [stating that "[t]he May 13, 2020 fire was set in motion by the failures of Raytheon and Saft."])

Against this backdrop and the record evidence, the question of whether Saft was the active tortfeasor or the primary cause cannot be decided as a matter of law at the Rule 56 stage. The issue of defect and causation must be put to the jury to see what it determines to be the causative event and entity primarily responsible.

### III. ARGUMENT

#### A. Legal Standard

A court shall grant summary judgment if the moving party "shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. FED. R. CIV. P. 56(c)(1)(A-B). *See Cook v. Caruso*, 531 F. App'x 554, 559 (6th Cir. 2013) (citing *EEOC v. Prevo's Family Market, Inc.,* 135 F.3d 1089, 1093 (6th Cir. 1998)); *see also Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir. 2016).

The party moving for summary judgment bears the initial burden of establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Graves v. Standard Ins. Co.*, No. 3:14-cv-558, 2016 WL 6875786, at *4 (W.D. Ky. Nov. 21, 2016). If the moving party has satisfied its burden of proof, the burden shifts to the non-movant. *Ornelas v. Los Arrieros, LLC*, 232 F. Supp. 3d 962, 967 (N.D. Ohio 2017); *see also Anderson v. Liberty Lobby*, 477 U.S. 256 (1986). The non-moving party may not simply rely on its pleadings but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Trans.*, 53 F.3d 146, 149 (6th Cir. 1995).

Importantly, when considering a motion for summary judgment, the court must view the evidence—pleadings, depositions, answers to interrogatories, admissions on file, and affidavits—and draw all reasonable inferences in the light most favorable to the non-moving party. *Hall v. Warren,* 443 F. App'x 99, 106 (6th Cir. 2011); *see Adams v. Metiva,* 31 F.3d 375, 378 (6th Cir. 1994); *see also Troche*, 814 F.3d at 798.

The "essential question" in considering a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hall,* 443 F. App'x at 106

(quoting *Anderson,* 477 U.S. at 251–52). Consistent with these principles, the court shall not "weigh the evidence or make credibility determinations." *Troche v*, 814 F.3d at 798.

      **B.**    **There are Genuine Issues of Material Fact Whether Saft LBBs Were Defective and Caused the April and May 2020 Events**

Saft leads its Motion with the remarkable argument that there is no genuine issue of material fact as to whether its LBBs are defective. (Mem. 5-8.) Fundamentally, this argument ignores the decades-old history of exothermic failures of Saft LBBs. Indeed, prior to the April 15, 2020 incident at Fairdale facility, there were four incidents.

- On October 31, 2008, there was an exothermic failure of LBBs at Saft. The root cause was determined to be the introduction of foreign object debris caused by a design issue in the LBB packaging. (Dr. Nagourney Rep. at 8, Dkt. 145, Ex. I.)

- On December 6, 2010, there was an exothermic failure of LBBs in Hohenfels, Germany. The evidence pointed to a root cause within the LBB itself. (*Id*. at 9, Dkt. 145, Ex. I.)

- On August 1, 2012, there was an exothermic failure of LBBs at Saft's facility in Maryland. The most probable causes were identified as a short within the battery itself (a design issue), or a cell internal hard short due to misassembly (a manufacturing issue). (*Id*. at 10, Dkt. 145, Ex. I.)

- On November 18, 2019, there was an exothermic failure of LBBs at Fort Polk. The cause was determined to be a short circuit of the cell. (*Id*. at 11, Dkt. 145, Ex. I.)

Even after the April 15, 2020 exothermic failure, there was yet another exothermal failure of Saft LBBs at Fairdale on May 14, 2021. (Rep. at 13, Dkt. 145, Ex. I.) In short, as of today, there have been six exothermic failures involving seven Saft LBBs. Not only is this an unacceptable

5

history of LBB failures represents 0.2% of the entire Saft LBB population. (*Id*. at 18, 26, Dkt. 145, Ex. I.)

That the LBBs caused the April 2020 failure cannot be disputed—even Saft and Raytheon's root cause analysis point to the batteries. (Nagourney Rep. at 25-26, Dkt. 145, Ex. I.) Therefore, in order to make the argument that its LBBs are not defective, Saft argues that Dr. Nagourney suggests that a defect in the LBBs is "merely a possible cause of the April Event—not a probable cause." (Mem. at 6.) Saft relies on the inapposite case of *Siegel v. Dynamic Cooking Systems, Inc.*, 501 F. App'x 397 (6th Cir. 2012). In that case, the defendant's expert offered a host of ***possibilities*** for the explosion. 501 F. App'x at 406. Unlike *Siegel*, however, Dr. Nagourney offered his opinions on a more probable than not basis—he did not opine in terms of possibilities. (*See, e.g.*, Dkt. 145, Ex. C, Dr. Nagourney Dep. Tr. 27:2-4 ["I'm able to state to a more probable than not basis that this was due to a malfunction of the system."]; *Id.* 30:18-19 ["I believe that [a defect in the Saft LBBs] is the most probable explanation."]; *Id*. 27:10-12 ["I believe they were [defective] in that they failed to prevent a failure, or some issue with the design allowed that failure to occur."].)

Dr. Nagourney concluded that a defect in the LBBs more likely or more probably than not caused the April 2020 catastrophic exothermic failure of LBBs. That is all that is required of Dr. Nagourney. He is not required to testify with absolute certainty. *See Dilts v. United Grp. Servs., LLC*, 500 F. App'x 440, 445 (6th Cir. 2012) ("Rule 702 does not require an expert to have absolute certainty in formulating his opinion."); *see also Johnson v. Memphis Light Gas & Water Div.*, 695 F. App'x 131, 137 (6th Cir. 2017) (stating that "because a plaintiff need only prove causation by a preponderance, . . . a[n] [expert] need only testify that his conclusion is more likely than not true"). Dr. Nagoruney's Reports and testimony create a genuine issue of material fact as to whether

Saft's LBBs were defective and caused the April and May 2020 events. Accordingly, Saft's Motion should be denied.

### C. There are Genuine Issues of Material Fact Whether Saft is the Primary or Active Tortfeasor

As the Court noted in its Memorandum Opinion and Order granting in part and denying in part Saft's Motion to Dismiss, the indemnity sought here "usually arises where the primary tortfeasor created the hazard, while the secondary tortfeasor simply failed to perform some legal duty, such as inspection or remedying a hazard." (Dkt. 102, Mem. Op. & Or. at 7) (citations omitted). As applied here, the record evidence—including Dr. Nagourney's Reports and testimony and Raytheon and Saft's root cause analysis—point the proverbial finger at Saft for creating the hazard. (*See* Dr. Nagourney Rep. 25-27; April 15, 2020 Root Cause Analysis, Dkt. 145, Ex. I). The record also demonstrates that Tom Owens was part of a FIT team that was tasked with determining the root cause of the April 15, 2020 event and remediating the damaged LBBs in Vault 2. (W. Vana Dep. Tr. at 37-38, 199, Ahtna MSJ, Ex. Z).

Saft relies on *Brown Hotel Co. v. Pittsburgh Fuel Co.*, 224 S.W.2d 165 (Ky. 1949) to buttress its argument. (Mem. at 9-11.) *Brown*, however, affords the relief Saft seeks. In *Brown*, a pedestrian fell through an uncovered manhole on the sidewalk outside the hotel. *Brown*, 224 S.W.2d at 166. The manhole was left uncovered by an energy company delivering coal. *Id*. The Court of Appeals of Kentucky concluded that the hotel was entitled to indemnity from the energy company because leaving the manhole cover off—*i.e.*, creating the condition—was the primary cause of the accident and the plaintiff's injuries. *Id*. at 167.

Here, the hazardous condition was created by Saft. While Ahtna and Tom Owens may have a had a duty to inspect and remediate that condition vis-à-vis Ownes' and Heather Neal's

7

participation in the FIT team, that does not obviate the need for Saft and to design and manufacture proper LBBs in the first instance that would have precluded Owens from being in Vault 2 on May 13, 2020. In Brown, the energy company was the active tortfeasor by leaving the manhole cover off and creating the hazardous condition. Saft did much more. It created a hazardous condition despite years of evidence and knowledge of defects within its LBBs. Saft's conduct would be akin to leaving the manhole cover off every day for a year (or more), knowing the manhole cover was not placed back, and then claiming surprise when someone was injured as a result.

It is simply dumbfounding that Saft would claim there is no evidence that would create a genuine dispute of material fact that it was—or could be found to be by the jury—the active (and sole active) tortfeasor. Not surprisingly, Saft resorts to a myopic view of the facts and circumstances of the case, attempting to separate the April failure and the May fire. As discussed above, but for the April 2020 event, there is no May 2020 event. Saft created the condition that caused the April 2020 LBB failure that necessitated Tom Owens being in Vault 2 on May 13, 2020. This creates a genuine issue of material fact that precludes summary judgment. Stated differently, it is up to the fact finder to determine whether Saft, or Ahtna, or both, is the active tortfeasor.

### D. Dr. Nagourney's Opinions are Reliable and Admissible

As a last-ditch, catch-all effort to prevail on summary judgment, Saft argues that if Dr. Nagourney's opinions are excluded, then Ahtna's claims against Saft necessarily fail. (Mem. at 14-15.) For the reasons discussed in Ahtna's Memorandum of Law in Opposition to Saft's Motion to Exclude Opinion Testimony of Dr. Tal Nagourney, filed concurrently herewith, there is simply no basis in law or fact to exclude Dr. Nagourney's opinions. Dr. Nagourney's opinions and

testimony are reliable and admissible. Therefore, the Court should reject Saft's catch-all effort to be dismissed from a case it has every right being in.

### IV. CONCLUSION

Saft's Memorandum attempts to absolve itself of any and all liability. Yet, its Memorandum fails to cleanse itself of the numerous factual issues that demonstrate Saft's own culpability and create genuine issues of material fact precluding the entry of summary judgment.

Date: May 31, 2024

Respectfully submitted,

**REMINGER CO., L.P.A.**

 /s/ Anthony Pernice
Anthony Pernice, Esq.
Reminger Co., L.P.A.
333 West Vine Street, Suite 1670
Lexington, Kentucky 40507
T: (859) 233-1311
F: (859) 233-1312
E: apernice@reminger.com

*Counsel for Defendants, Ahtna Support and Training Services, LLC, Ahtna Netiye', LLC, and Ahtna, Incorporated*

and

 /s/Clem C. Trischler
Clem C. Trischler, Esq. (*Pro Hac Vice*)
Frank S. Stoy, Esq. (*Pro Hac Vice*)
Pietragallo Gordon Alfano Bosick & Raspanti, LLP
One Oxford Centre, 38th Floor
Pittsburgh, Pennsylvania 15219
T: (412) 263-1816
F: (412) 263-4246
E: CCT@Pietragallo.com
E: FHS@Pietragallo.com

*Co-Counsel for Defendants, Ahtna Support and Training Services, LLC, Ahtna Netiye', LLC, and Ahtna, Incorporated*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and accurate copy of the foregoing was served via electronic mail this 31st day of May, 2024 to the following:

Rod Payne
Sarah Miller
STEPTOE & JOHNSON, PLLC
700 North Hurstbourne Pkwy., Suite 115
Louisville, KY 40222
rod.payne@steptoe-johnson.com
sarah.miller@steptoe-johnson.cm
*Counsel for Plaintiffs*

Sarah Virginia Bondurant Price
Frank Talbott V
Andrew F. Gann, Jr.
McGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
agann@mcguirewoods.com
ftalbott@mcguirewoods.com
vbondurantprice@mcguirewoods.com
*Co-Counsel for Plaintiffs*

Chadwick A. Wells
Charles Michael Van Sickle
WARD HOCKER & THORNTON, PLLC
9300 Shelbyville Road, Suite 700
Louisville, KY 40222
cwells@whtlaw.com
mike.vansickle@whtlaw.com
*Counsel for Third-Party Defendant, Koorsen Fire & Security, Inc.*

Ian T. Ramsey
Neil E. Barton
STITES & HARBISON PLLC
400 W. Market Street, Suite 1800
Louisville, KY 40202-3352
iramsey@stites.com
nbarton@stites.com

and

Kyle S. Schroader
STITES & HARBISON PLLC
250 W. Main Street, Suite 2300
Lexington, KY 40507-1758
kschroader@stites.com
*Counsel for Third-Party Defendant, Saft America, Inc.*

Douglas W. Langdon
D. Christopher Robinson
Michelle C. Fox
FROST BROWN TODD LLP
400 W. Market Street, Suite 3200
Louisville, KY 40202
(502) 589-5400
dlangdon@fbtlaw.com
crobinson@fbtlaw.com
mfox@fbtlaw.com
*Counsel for Defendant, Thomas M. Owens*

                      */s/ Clem C. Trischler*
                      Clem C. Trischler