UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| RAYTHEON COMPANY | Plaintiff |
| v. | Civil Action No. 3:21-cv-00239 |
| AHTNA SUPPORT AND TRAINING SERVICES, LLC; AHTNA NETIYE', LLC; AHTNA, INCORPORATED; THOMAS M. OWENS | Defendants |

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Third-Party Defendant Koorsen Fire & Security, Inc. ("Koorsen") moves for summary judgment. [DE 149].[1] Third-Party Plaintiff Ahtna Support and Training Services, LLC ("Ahtna") responded [DE 195] and Koorsen replied [DE 218]. Koorsen also moves to exclude the testimony of Scott Dillon [DE 153] and Bruce Deal [DE 154] to which Ahtna responded [DE 192; DE 201] and Koorsen replied [DE 214; DE 215]. These matters are ripe. For the reasons below, Koorsen's Motion for Summary Judgement [DE 149] is **GRANTED**, and Koorsen's Motion to exclude as to Scott Dillon [DE 153] and Bruce Deal [DE 154] are **DENIED as moot**. Third-party defendant Koorsen is dismissed as a party as no claims remain pending against them.

**I.   BACKGROUND**

Raytheon is a contractor of aerospace and military defense equipment that operates a warehouse in Fairdale, Kentucky. [DE 1 at 1-3]. At their Fairdale location Raytheon maintains, stores, and services multiple mobile charging stations and storage locations for lithium-ion battery

---

[1] The Joint Local Rules for the Eastern and Western Districts of Kentucky contemplate a single, unified motion and memorandum. *See* Local Rule 7.1. Going forward, counsel is advised to file a unified motion.

boxes ("LBBs"). [*Id.* at 3]. The LBB's were designed and manufactured by Saft but owned by the government pursuant to military contracts. *Id*. Each LBB was stored within specially designed trailers commonly referred to as vaults. [DE 144 at 1006].

At issue in this case is Vault #2 which comprised an explosion proof container mounted on a tow trailer with shelves on each side containing LBBs connected to chargers. [DE 1 at 4]. Vault #2 was located on a loading dock at the Fairdale warehouse. *Id*. Ahtna agreed to provide qualified sustainment services and other necessary support to Raytheon, which included management and oversight of Vault #2. [*Id.* at 6].

On or about April 15, 2020, an over-heating ("exothermic") event occurred in Vault #2 at the Fairdale facility ("April Event"). [DE 144 at 1006]. Two military-grade LBBs overheated for unknown reasons. [*Id.*]. Two LBBs suffered severe damage, and adjacent LBBs experienced minor secondary damage to. [DE 1 at 6]. All the LBBs in Vault #2, including those damaged, remained stable. [*Id.*]. On May 8, 2020, representatives from Raytheon, Ahtna, and Saft formed a Failure investigation team ("FIT") and met to discuss safe removal of the two severely damaged LBBs which had melted to the floor of Vault #2. [DE 150 at 3798]. At this meeting Ahtna field engineer Thomas M. Owens ("Owens") suggested using a sledgehammer and crowbar to peel the melted batteries from the floor, but his idea was rejected as unsafe. *Id*. Ahtna was instructed not to touch the batteries by multiple members of the FIT team at the meeting. [*Id.*].

On May 13, 2020, Owens and two other Ahtna engineers, David Metcalfe and Greg Hart, arrived at Vault #2 with instructions to take photographs of the damaged LBBs ("May Event"). [*Id.* at 7]. Instead, on their own volition, using a sledgehammer and pry-bar, they began removing the two LBB's from the floor of the vault where they had melted and fused. [*Id.*]. After removing the first LBB, Owens and the other employees left for lunch, and returned to remove the second

LBB. [*Id*.]. During their attempted removal, the second LBB began to emit sparks and smoke, before catching fire in a "thermal runaway event." [*Id*.]. The event spread to other LBBs in a "cascading thermal runaway." [*Id*.].

Vault #2 contained a high-pressure carbon dioxide fire suppression system maintained by Koorsen. [DE 150 at 3798]. Koorsen tested and inspected the Vault #2 fire system periodically, most recently on December 19, 2019, 5 months prior to the incident in May 2020. *Id* at 3799. The fire system failed to suppress the fire, and the Fairdale Fire Department responded. [DE 1 at 8]. The Fairdale Fire Department suppressed the fire inside the vault before it reignited early the next morning, five hours after the firefighters left. [*Id*.] After returning to the warehouse, the Fairdale fire department decided the fire could not be safely suppressed and removed the vault away from other structures to burn itself out. [*Id*.].

Raytheon claims the complete loss of 304 LBBs, Vault #2 itself, and $2,700,000 in fire-related damages and remediation costs. [*Id*.]. Raytheon alleges four counts against Ahtna; Count I breach of contract, Count II Negligence, Count III Gross Negligence, and Count IV negligent training. [DE 1 at 9-16]. Raytheon also seeks declaratory judgment. [*Id*. at 16]. Ahtna, acting as a third-party plaintiff, brings claims of indemnity against Koorsen and Saft as third-party defendants. [DE 70 at 480].

## II. ANALYSIS

Koorsen moves for summary judgment on Ahtna's last surviving third-party claim of implied indemnity (Count V). [DE 70 at 487-88]. Count V alleges that Koorsen had a duty to perform its services related to maintaining, inspecting, and testing the fire suppression system in Vault #2 in a reasonably prudent manner. [*Id.* at 485]. The Third-Party Complaint alleges that Koorsen failed to carry out these duties by "failing to ensure proper connection and function of the

fusible links and manual pull stations and/or by otherwise failing to ensure that the system would activate upon ignition of a fire." [*Id.*]. Ahtna claims that Koorsen's negligence was both the actual and proximate cause of the loss of Raytheon's property and the LBBs, including all damages alleged in Plaintiff's Original Complaint against Ahtna. [*Id.*].

Koorsen argues in its Motion for Summary Judgment that Ahtna is precluded from "any and all indemnity claims against Koorsen" pursuant to longstanding Kentucky law. [DE 150 at 3801]. Koorsen contends that even when accepting all of Ahtna's factual allegations as true for purposes of summary judgement, Raytheon's damages were caused by the "active wrongdoing" of Thomas Owens, Ahtna's own employee, which precludes them from seeking indemnity. [*Id.* at 3803]. Additionally, Koorsen argues that Ahtna has failed to provide any evidence regarding distinct damages caused by Koorsen's alleged negligence, failing to sufficiently make the prima facia case of negligence. [*Id.* 3796]. And finally, Koorsen argues that Ahtna would only be entitled to an apportionment instruction in this case, not indemnity. [*Id.*].

1. **Standard**

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 242.

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant,

4

who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States,* 342 F.3d 493, 497 (6th Cir. 2003*)* (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., LLC v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (*quoting Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted). If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

### 2. Active Tortfeasor Status

Koorsen argues that regardless of whether this Court finds that Koorsen had negligently maintained the fire suppression system, indemnity is not proper as Ahtna itself is an active

tortfeasor precluded from being indemnified under Kentucky law. [DE 150 at 3803]. Koorsen claims that there are no material disputes of fact as to Ahtna's status as an active tortfeasor and summary judgement is proper. *Id*. Because the status of Ahtna as an active tortfeasor is dispositive in a claim for indemnity, the Court need not decide whether Koorsen qualifies as an active or passive tortfeasor.

Under Kentucky law, claims based on indemnity are "exceptions to the general rule, and are based on principles of equity." *Hall v. MLS Nat. Med. Evaluations, Inc.,* No. CIV A 05-185-JBC, 2007 WL 1385943, at *3 (E.D. Ky. May 8, 2007) (*quoting Degener v. Hall Contracting Corp.,* 27 S.W.3d 775, 780 (Ky. 2000). Indemnity claims can only arise in two situations,

> (1) Where the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment; or
>
> (2) where both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury.

*Louisville Ry. Co. v. Louisville Taxicab & Transfer Co.*, 256 Ky. 827, 77 S.W.2d 36, 39 (1934). The first of these two causes of indemnity does not apply as Ahtna is being sued directly for their own actions and there is no argument that they are being held liable due to an agency relationship. *Affiliated FM Ins. Co. v. RAM Constr. Servs. of Michigan, Inc*., No. CV 5:21-233-DCR, 2023 WL 322390, at *3 (E.D. Ky. Jan. 19, 2023). The second does apply, and states that "a right to total indemnity may exist if the joint tortfeasors are not in pari delicto and the party secondarily negligent asserts a claim against the one primarily negligent." *Lexington Country Club v. Stevenson*, 390 S.W.2d 137, 143 (Ky. 1965) (quoting *Brown Hotel Co. v. Pittsburgh Fuel Co.,* 311 Ky. 396 (1949)). In other words, a party cannot seek indemnity against another party if they too are an "active wrongdoer" or tortfeasor. *ISP Chemicals LLC v. Dutchland, Inc*., 771 F. Supp. 2d

6

747, 751 (W.D. Ky. 2011) (*citing Burton v. HO Sports Co.*, No. 4:06CV-100-JHM, 2009 WL 1390832 (W.D. Ky. May 14, 2009)). An active tortfeasor arises "where the primary tortfeasor created the hazard," while the "secondary tortfeasor simply failed to perform some legal duty, such as inspection or remedying a hazard." *Stanford v. United States*, 948 F. Supp. 2d 729, 745 (E.D. Ky. 2013) (citing *Brown Hotel Co.,* 311 Ky. 396) ("[w]here one of two parties does an act or creates a hazard and" a second party, "while not concurrently joining in the act, is, nevertheless thereby exposed to liability . . . the party who was the active wrongdoer or primarily negligent can be compelled to make good to the other any loss he sustained."). Under Kentucky law there can be more than one active tortfeasor, and an active tortfeasor may not indemnify another active tortfeasor. *Dutchland, Inc.*, 771 F. Supp. 2d at 751.

Koorsen argues that there is no genuine dispute of fact that shows Ahtna is anything other than an active tortfeasor, which would preclude indemnification. [DE 150 at 3803]. Ahtna disagrees, claiming that if they were found negligent it would be as a passive tortfeasor, and that Koorsen would be an active tortfeasor. [DE 195 at 8208].

It is undisputed in this case that Ahtna was the employer of field engineers Thomas Owens, David Metcalfe, and Greg Hart. [DE 145 at 2139; SEL Exp. Rep. at 1]. It is further undisputed that during a teleconference Owens suggested using a sledgehammer and crowbar unstick the damaged batteries from the vault floor [DE 145-6 at 1777; Dep. H. Neal, at 87:6–24]. In response, Owens was told this was unsafe [DE 145-7 at 1779; Dep. J. Paris, at 160:14– 161:25] and was instructed, in his own words, "many times" not to touch the LBBs. [DE 145-5 at 1775; Owens Dep. at 161:23– 162:4; DE 145-7 at Paris Dep. at 69:3–8]. Finally, it is undisputed that on May 13, 2020, the three Ahtna field engineers entered Vault #2 where Owens attempted to dislodge the damaged LBBs with pry bars and sledgehammers, during which the LBB entered thermal runaway, causing a chain

reaction with other LBB's that ignited the entirety of Vault #2. [DE 145-5 at 1773-74; Owens Dep. at 64:16–65:1; 145-3 at 1583; Nagourney Dep. at 126:6–23].

The facts of this case closely parallel the Kentucky state law case of *Greenwell v. Lowe's*. In *Greenwell* the court held that "the absence of a tether on the traffic light may have been a contributing cause of the accident, and Lowe's may have been negligent in so constructing the traffic light," as such both parties could be seen as "tortfeasors in pari delicto or active tortfeasors." *Id.* (quoting *City of Louisville v. Louisville Ry. Co.,* 156 Ky. 141 (1913)). However, there was "no scenario of provable facts" where Greenwell's purported negligence could be considered passive and entitled to indemnity. *Id*. In this case, if Koorsen were to be found negligent for failing to maintain the fire system it would have to be as a passive tortfeasor. Ahtna alleges that Koorsen "failed to properly maintain, inspect, and test the fire suppression system within Vault No. 2" [DE 195 at 8199]. These allegations are almost verbatim what is defined as passive negligence in Kentucky caselaw. *Stanford*, 948 F. Supp. 2d at 745.

But, even if this Court were to find that Koorsen was an active tortfeasor against the great weight of law, Ahtna would still not be entitled to indemnity. Under the undisputed facts of this record, no reasonable fact finder could find that Ahtna was merely a passive tortfeasor. Even if a negligently maintained fire system was a contributing factor in the resulting harm, Ahtna's own actions, ignoring instructions and removing recently damaged and unstable LBB's with a crowbar and sledgehammer, go well beyond a failure to perform a legal duty to qualify as a passive tortfeasor. *Stanford*, 948 F. Supp. 2d at 745. Actively ignoring safety warnings and engaging in behavior despite those warnings creates an affirmative risk of harm and qualifies as active negligence. *Id*. Thus, Ahtna's claim for common law indemnity must fail and Koorsen's Motion for Summary Judgement as to Ahtna's claim for implied indemnity is **GRANTED**.

3. **Failure to Quantify Damages**

Koorsen further argues that Ahtna is not entitled to indemnity as they have failed to demonstrate what damages were caused by Koorsen's alleged negligence, thus failing to satisfy one of the requirements of the prima fascia case for indemnity. [DE 150 at 3805]. Ahtna argues that Koorsen is actually demanding mathematical precision in the calculation for damages which is explicitly not required by Kentucky law. [DE 195 at 8210]. Kentucky law "does not tolerate uncertainty as to the fact of damage (i.e., recovery will not be had where there is uncertainty as to whether the damage has in fact occurred), once the existence of some damage is certain, uncertainty as to the amount of damage will not defeat recovery." *Gibson v. Kentucky Farm Bureau Mut. Ins. Co.*, 328 S.W.3d 195, 205 (Ky. Ct. App. 2010), as modified (Dec. 3, 2010). If there is a genuine dispute of material fact on the record as to whether there were damages associated with Koorsen's actions, this would not be defeated because Koorsen did not "provide some kind of range of any damages" or their expert used phrases such as "may" or "possibly" as claimed by Koorsen. [DE 218 at 9497]. It is undisputed in the record that the fire suppression system did not go off, and Koorsen has provided facts on the record that show that had it activated, it could "have limited the thermal damage to LBBs 528 and 941 and possibly prevented or reduced the damage to the 14 other LLBs." [DE 148-26 at 3447; Dillon Rep. at 53-54]. As such, summary judgement is not proper for failure to quantify damages. However, as this court determined in section 2 of this decision, this Motion for Summary Judgement is still **GRANTED** as Ahtna would be held liable as an active tortfeasor if they were found negligent at trial.

4. **Apportionment**

Ahtna claims that they have preserved their right to apportionment since they have "actively asserted claims against the third-party defendant [Koorsen] so as to preserve its right to

apportionment pursuant to KRS § 411.82." [DE 195 at 8212]. Ky. Rev. S. § 411.182 "provides a right to an apportionment interrogatory or finding where underlying substantive fault exists, but it does not provide a substantive cause of action itself." *Hall,* 2007 WL 1385943, at *2; *Asher v. Unarco Material Handling, Inc.,* No. CIV.A.6:06-548-DCR, 2008 WL 2473680, at *3 (E.D. Ky. June 16, 2008).* Under Ky. Rev. S. 411.182(1) apportionment is only possible against named parties and parties who settled under Ky. Rev. S. 411.182(4). If Ahtna's claim to indemnity is denied there will be no more claims against Koorsen since apportionment itself is no cause of action and Raytheon never brought a direct suit against Koorsen themselves. Koorsen would then be removed from this case. *Burton,* 2009 WL 1390832, at *2.* However, this does not preclude Ahtna from raising the issue of apportionment at trial to reduce damages if there is a finding that they are entitled to such an instruction. *Kevin Tucker & Associates, Inc. v. Scott and Ritter, Inc.*, 842 S.W.2d 873 (Ky. App. 1992).

### III.    CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS**;

1. Koorsen's Motion for Summary Judgement [DE 149] is **GRANTED**.
2. **Koorsen's Motion to exclude the testimony of Scott Dillon [DE 153] is DENIED as moot.**
3. Koorsen's Motion to exclude the testimony of Bruce Deal [DE 154] is **DENIED as moot.**
4. Third-party defendant Koorsen is removed from this case.